1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8
9

| | |
|---|---|
| STEVEN LEON COLVIN, | 1:09-CV-00320 LJO SMS HC |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| MIKE POULOS, Warden, | |
|     Respondent. | |

10
11
12
13
14
15
16
17

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

18
19
20
21
22
23
24
25
26
27
28

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tuolumne, following his conviction by jury trial on July 7, 2006, of transportation of a controlled substance (Cal. Health & Saf. Code § 11379(a)), possession of a controlled substance (Cal. Health & Saf. Code § 11350(a)), possession of a smoking device (Cal. Health & Saf. Code § 11364), possession of a switchblade knife (Cal. Penal Code § 653k), possession for sale of a controlled substance (Cal. Health & Saf. Code § 11378), and possession of a controlled substance while armed with a firearm (Cal. Health & Saf. Code § 11370.1). See Petition at 2. The jury also found true allegations that Petitioner was armed with a firearm within the meaning of Cal. Penal Code § 1022(c). Id.  On October 2, 2006, he was

1  sentenced to state prison for a determinate term of seven years and eight months. Id.

2      Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District. On

3  October 30, 2007, the judgment was affirmed. (LD 1.[1]) Petitioner then filed a petition for review in

4  the California Supreme Court. On January 3, 2008, the petition was summarily denied. (LD 2.)

5      On January 5, 2009, Petitioner filed the instant federal habeas petition.  Respondent filed an

6  answer to the petition on June 2, 2009.  Petitioner did not file a traverse.

7                    **FACTUAL BACKGROUND**[2]

8  *The Prosecution Case*

9      The prosecution's evidence established that in the early morning of October 30, 2005,
   California Highway Patrol Officer Jason Austin and his partner, Officer Jesse Udovich,
10 responded to a call of a hit and run accident at the Black Oak Casino in Tuolumne County.
   The officers located one of the vehicles, a Dodge pickup belonging to Colvin, parked in the
11 casino parking lot with Colvin sitting on the passenger's seat asleep. They knocked on
   Colvin's window but were unable to rouse him. Austin walked to the driver's door, which was
12 unlocked, and used its electronic controls to unlock the door on the passenger's side allowing
   Udovich to open it and wake Colvin.

13
      Colvin appeared very intoxicated and fell to the ground as the officers tried to get him
14 out of the truck. Austin retrieved a switchblade knife from Colvin's front pocket and walked
   him to the patrol car. He removed Colvin's wallet to look for his identification and found a
15 zip-lock baggie containing a small amount of cocaine.

16     Austin found a camouflage bag in the bed of the truck. In a pouch in the bag, he found
   a plastic baggie containing methamphetamine and an envelope addressed to Colvin at his
17 residence in Galt.

18     In the truck's cab, Austin found a large, soft, briefcase-type bag that contained three
   zippered compartments inside. He opened the middle compartment and found a loaded .45
19 caliber handgun. After arresting Colvin, Austin continued searching the briefcase and found a
   removable pouch under where the handgun had been. Inside the pouch were four clear bags
20 containing 89 grams of methamphetamine. Under this pouch Austin found a box of baggies
   and a scale. Detective William Burr removed a baggie containing three grams of
21 methamphetamine and a glass pipe from a zipper compartment on the outside of the
   briefcase.

22
      Officer Austin testified he found the black briefcase on top of the center console
23 towards the rear of the truck.

24 *The Defense Case*

25     Benjamin Cruz testified that in late October 2005, he met a woman in Stockton who

26 _____

27     [1]"LD" refers to the documents lodged by Respondent with his answer.

28     [2]The factual background is taken from the opinion of the state appellate court and is presumed correct. 28
   U.S.C. § 2254(e)(1).

drove him to Oakley in east Contra Costa County where they went barhopping for approximately eight hours. Cruz denied taking any drugs that day and claimed he had not used methamphetamine in five years. Cruz was walking in Oakley when he saw a paper grocery bag on the ground, picked it up, and glanced inside. Even though he did not inspect the bag's contents, he concluded it contained methamphetamine because it had a strong odor.[FN1]  Cruz became paranoid and did not want to "get shot for picking up someone else's drugs." He noticed some people in a car looking at him so he shoved the bag down his pants. When the car passed him again, he became more nervous so he approached an open, bright yellow truck at a construction site intending to leave the bag there temporarily. Cruz took a large plastic zip-lock bag out of the paper bag and placed it in the truck in a black bag that did not have side pockets. He did not move anything in the black bag while placing the plastic bag there. Cruz returned after sunset and found the yellow truck gone.[FN2]

FN1. Cruz was familiar with methamphetamine because he had used it in the past.

FN2. Cruz also testified he did not know what he was going to do with the drugs.

Cruz later heard on the street in Stockton that somebody's drugs were picked up and that Colvin was being prosecuted. He contacted defense counsel after getting his phone number from the telephone book.

On cross-examination, Cruz testified he heard on the street "somebody was looking for drugs, that someone picked up some drugs and that some drugs were planted in someone else's vehicle." In an internet newspaper, Cruz read an article he thought was about the drugs he took. He came forward on his own and testified because he was afraid for his safety and that of his family and did not want to get killed over the drugs. He wanted the people whose drugs he took to know that although he took the drugs, he did not end up with them. Cruz was impeached with a felony conviction.

Colvin testified he worked as an underground foreman for J & M, Inc. and used a bright yellow company pickup for work. He would leave the company truck open so workers could get tools from it or drive it if necessary.

In late October 2005, Colvin was working in Oakley. The week before his arrest, Colvin carried the camouflaged bag and black briefcase in his work truck. On Saturday, October 29, 2005, Colvin and his friend, Josh Northrop went hunting from approximately 5:00 a .m. until 2:00 p. m. Prior to leaving, Colvin removed the camouflage bag and briefcase from his company truck and placed the briefcase behind the driver's seat of his pickup and the camouflage bag in the truck's bed. While hunting, Colvin retrieved ammunition from the camouflage bag but he did not see any baggies or white powder in the bag. Afterwards, he and Northrop went to Jamestown where Colvin began drinking. Eventually they wound up at the Black Oak Casino and Colvin went to sleep in the parked truck.

(LD 1.)

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Tuolumne County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

## II.  Legal Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly

1   established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by

2   the Supreme Court at the time the state court renders its decision." Id.

3      Finally, this Court must consider whether the state court's decision was "contrary to, or

4   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

5   *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the

6   writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

7   question of law or if the state court decides a case differently than [the] Court has on a set of

8   materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

9   "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state

10  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

11  applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

12     "[A] federal court may not issue the writ simply because the court concludes in its

13  independent judgment that the relevant state court decision applied clearly established federal law

14  erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

15  federal habeas court making the "unreasonable application" inquiry should ask whether the state

16  court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

17     Petitioner has the burden of establishing that the decision of the state court is contrary to or

18  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

19  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

20  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

21  decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th

22  Cir.1999).

23     AEDPA requires that we give considerable deference to state court decisions. The state

24  court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

25  interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537

26  U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

27  **III.  Review of Petition**

28     Petitioner argues he was denied his right to due process and the effective assistance of

counsel when his trial counsel failed to play a video surveillance tape as part of the defense.

This claim was presented on direct appeal to the Fifth DCA, where it was rejected in a reasoned opinion. (LD 1.) Petitioner then presented the claim to the California Supreme Court where it was summarily denied. (LD 2.) The California Supreme Court, by its "silent order" denying review of the Fifth DCA's decision, is presumed to have denied the claim presented for the same reasons stated in the opinion of the Fifth DCA.   Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The appellate court discussed and denied Petitioner's claim as follows:

> After Colvin testified, defense counsel asked to play a surveillance tape from the Black Oak Casino that purportedly showed that the black briefcase was not on his truck's console as Officer Austin testified. The defense then rested subject to playing the video for the jury and the court allowed the prosecutor to present a rebuttal witness out of turn.
>
> District attorney investigator, Alan D'Hondt, testified he interviewed Cruz on May 31, 2006. Cruz told him that he had gone to an area that he thought was Oakley. However, he was not sure it was and for all Cruz knew "it could have been Texas." Cruz also stated that he and the woman were under the influence of alcohol and drugs. Cruz said he placed the bag containing drugs in a duffle bag. He became aware of Colvin's case by reading an article in the Union Democrat on his computer.
>
> After D'Hondt testified, the court discussed with counsel playing the casino's surveillance video. Defense counsel advised the court that he could not play the video without a certain software program owned by the casino. The prosecutor responded he could make arrangements to play the video but not over the lunch hour.
>
> After lunch, defense counsel agreed that in lieu of the video he would have Northrop testify to the location of the briefcase in the truck. Northrop testified Colvin usually kept the black briefcase behind the seat or behind the center console of the seat. He did not see it at all the day Colvin was arrested.
>
> On August 21, 2006, defense counsel moved for a new trial alleging, in pertinent part, that the prosecution's statement that the software necessary to view the video was unavailable resulted in the suppression of material impeachment evidence. At a subsequent hearing, defense counsel submitted several still images from the surveillance video that appeared to show there was no black briefcase on the console when the officers first contacted Colvin in his truck in the casino parking lot.
>
> On October 2, 2006, the court denied the motion.
>
> *DISCUSSION*
>
> Colvin contends the casino's surveillance video showing there was no black briefcase on his truck's console when he was arrested was very important to impeach Officer Austin and to corroborate his testimony that he kept the briefcase behind the driver's seat. Thus, according to Colvin, he was denied his right to the effective assistance of counsel and to due process by his attorney's failure to present this evidence, requiring his convictions in counts I, III, and VI be reversed. We will reject these contentions.
>
> "To prevail on [an ineffective assistance of counsel] claim, [a defendant] must

establish his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. [Citations.]" *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007.)

"In considering a claim of ineffective assistance of counsel, it is not necessary to determine ' "whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." ' [Citations.] It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a 'reasonable probability' that absent the errors the result would have been different. [Citations.]" *People v. Mesa, supra*, 144 Cal.App.4th at p. 1008.)

Here, it was undisputed that methamphetamine was found in the black briefcase and the camouflage bag belonging to Colvin. Colvin's defense was that Cruz placed a plastic zip-pock bag with four baggies containing methamphetamine in the briefcase when the briefcase was in Colvin's work truck and Colvin unwittingly transferred the briefcase to his personal truck, where it was found by the officers. However, Cruz's testimony did not account for the methamphetamine found in the camouflage bag, the methamphetamine and pipe found in the side pocket of the briefcase, or the scale and papers found in briefcase's middle compartment. His testimony was also contradicted by Officer Austin who testified that the methamphetamine in the briefcase was found in a pouch, not a zip-lock bag, and was located under Colvin's handgun, not on top of it as would be expected from Cruz's testimony that he merely stuffed the zip-lock bag in the briefcase.

Further, Cruz's testimony was inherently implausible. Cruz claimed he feared for his safety after discovering the methamphetamine. Nevertheless, he stuffed it in his pants and walked away with it even after seeing a car he believed could be carrying the angry owners of the drug. His veracity was further undermined by his testimony that he no longer used methamphetamine and did not know what he was going to do with it because he did not explain why he would risk his personal safety for no apparent reason.

Cruz's explanation for coming forward was equally troubling. Cruz claimed he came forward to testify because he did not want whoever lost the methamphetamine to hurt him or his family. By testifying, Cruz wanted to let them know that although he picked up the methamphetamine, he did not end up with it. However, he did not explain why he believed whoever lost the methamphetamine would not be just as upset with him for taking the methamphetamine as the person who ultimately wound up with it.

Cruz was also impeached with statements he made to investigator D'Hondt and a prior felony conviction.

In contrast to the problems with Colvin's defense, the impeachment value of the video contradicting Officer Austin's testimony was minimal. As noted above, Colvin did not present evidence disputing that methamphetamine was found in the locations testified to by the prosecution witnesses. Further, the possibility Officer Austin may have been wrong regarding the location of the briefcase in the Colvin's truck did not affect these undisputed facts. Additionally, the video's corroboration of Colvin's claim that he placed the briefcase behind his seat did little to shore up the shortcoming of his defense. As discussed above, these shortcomings included the failure of Colvin's defense to account for *all the methamphetamine* found in his belongings and its reliance on a witness whose testimony was severely impeached. Thus, we reject Colvin's ineffective assistance of counsel and denial of due process claims because Colvin was not prejudiced by the failure to play the casino video to the jury.

1  (LD 1.)

2      The law governing ineffective assistance of counsel claims is clearly established for the

3  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Canales v. Roe, 151

4  F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective assistance

5  of counsel, the court must consider two factors.  Strickland, 466 U.S. at 687; Lowry v. Lewis, 21

6  F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was

7  deficient, requiring a showing that counsel made errors so serious that he or she was not functioning

8  as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner

9  must show that counsel's representation fell below an objective standard of reasonableness, and must

10 identify counsel's alleged acts or omissions that were not the result of reasonable professional

11 judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d

12 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court

13 indulges a strong presumption that counsel's conduct falls within the wide range of reasonable

14 professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th

15 Cir.1994).

16      Second, the petitioner must demonstrate that "there is a reasonable probability that, but for

17 counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694.

18 Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial,

19 one whose result is reliable.  Id. at 688.  The court must evaluate whether the entire trial was

20 fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78

21 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

22      A court need not determine whether counsel's performance was deficient before examining

23 the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at

24 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in

25 prejudice must necessarily fail. However, there are certain instances which are legally presumed to

26 result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of

27 counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v.

28 Cronic, 466 U.S., at 659, and n.25 (1984).

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [United States Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  The habeas corpus applicant bears the burden to show that the state court applied United States Supreme Court precedent in an objectively unreasonable manner.  Price v. Vincent, 538 U.S. 634, 640 (2003).

In analyzing and rejecting this claim, the appellate court applied the Strickland standard and determined that Petitioner had failed to demonstrate that any potential error was prejudicial. At most, the video surveillance tape would have showed that Officer Austin was wrong about the location of the briefcase in the vehicle. As fully discussed by the appellate court, regardless of the location of the briefcase within the vehicle, it was undisputed that methamphetamine was found in both the briefcase as well as Petitioner's camouflage bag. Cruz's testimony did not account for the methamphetamine discovered in the camouflage bag, as well as the pipe found in a side pocket of the briefcase, or the scale and papers found in the middle compartment of the briefcase. Also, Cruz's testimony that he had placed a zip-lock bag containing the methamphetamine was contradicted by the officer's testimony that the methamphetamine was discovered in a pouch, not a zip-lock bag, and it was located beneath Petitioner's gun, not on top as would be expected if Cruz had merely placed the bag in the briefcase.

In addition, Cruz's testimony was not credible. He was impeached with prior statements made to an investigator and a prior felony conviction. Also, Cruz testified that he found the methamphetamine and feared for his safety because of his discovery. When a vehicle passed by that he believed could possibly be the angry owners of the drugs, he did not leave the drugs but instead stuffed them in his pants and walked away with them. He further testified that he did not know what he was going to do with them. His explanation was completely unbelievable.

In sum, there was hardly any impeachment value to the surveillance video. It may have shown Officer Austin was wrong about the location of the briefcase in the truck, but it provided

nothing to undermine the undisputed facts that methamphetamine, weapons, and drug paraphernalia were located in Petitioner's vehicle. Therefore, there is no reasonable probability that, but for counsel's alleged errors, the result would have been different. Strickland, 466 U.S. at 694.  The state court rejection of this claim was not contrary to, or an unreasonable application, of the Strickland standard. In addition, the failure to play the surveillance video did not render the proceeding so fundamentally unfair as to deprive the petitioner of due process. Estelle v. McGuire, 502 U.S. 62, 68 (1991)

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 8, 2009**                          **/s/ Sandra M. Snyder**
                                                                  UNITED STATES MAGISTRATE JUDGE